IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LISA BROWN, *individually, and on behalf of others similarly situated*, <br><br> *Plaintiff*, <br> v. <br><br> DATA SEARCH COLLECTION, INC. AND ELEVATE PATIENT FINANCIAL SOLUTIONS, LLC, <br><br> Defendants. | Case No.: 5:24-cv-1047 <br><br> CLASS ACTION <br><br> **Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Lisa Brown ("Ms. Brown"), individually, and on behalf of all others similarly situated, and for her Class Action Complaint against Defendant Data Search Collection, Inc. ("DataSearch") and Defendant Elevate Patient Financial Solutions, LLC ("Elevate PFS") states:

### BACKGROUND

1. This case is about stopping receiving unwanted and unsolicited robocalls, especially during one of the most sensitive times in one's life – after the death of a loved one.

2. Ms. Brown, unfortunately, recently had a loved one, her boyfriend, unexpectedly pass away at a hospital in San Antonio, Texas.

3. Despite Ms. Brown not providing prior express consent, or any form of consent, to Defendants to place calls to her and despite Ms. Brown not being a guarantor or in any way obligated to be responsible for her deceased-boyfriend's medical bills, Defendants incessantly called Ms. Brown concerning her deceased-boyfriend's accounts with the hospital at which he passed away.

1

4. The experience of receiving such calls was particularly traumatic for Ms. Brown. Each of the calls detailed in this Complaint were a painful reminder of the loss of a loved one.

5. Ms. Brown brings this class action to prevent Defendants from placing incessant calls to others, like herself, who should have never received such calls in the first instance.

6. Ms. Brown also brings this action to hold DataSearch individually accountable for its improper debt collection practices.

7. Unfortunately, the placing of robocalls is a rampant problem in this country. In the first eight months of 2024 alone, approximately 34.3 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited Sep. 3, 2024). The private right of enforcement of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

8. Additionally, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Texas Debt Collection Act, TEX. FIN. CODE ANN. § 392.001 *et seq.* ("TDCA") serve an important purpose of punishing improper debt collection practices, like those at issue in this case.

9. DataSearch is a company that aggressively attempts to collect debts for medical service providers.

10. One of the ways in which DataSearch aggressively attempts to collect debt, in part, through placing robocalls, i.e., prerecorded voice calls, to the phones of consumers.

11. Elevate PFS is a company that works with various hospitals to attempt to get persons to pay for various medical bills and services.

12. One of the ways in which Elevate PFS attempts to get persons to pay for various medical bills and services is by placing robocalls, i.e., prerecorded voice calls, to the phones of such persons.

**PARTIES AND BACKGROUND ON THE PARTIES**

13. Ms. Brown is an individual who at all times material to this Complaint resided in Converse, Texas, and is a citizen of the State of Texas.

14. DataSearch, a citizen of the State of Texas, is a Texas corporation whose principal place of business is located in San Antonio, Texas. DataSearch may be served with process by serving its registered agent Mary Lou San Marco at 85 N.E. Loop 410, Suite 575, San Antonio, Texas 78216.

15. DataSearch's website is located at www.datasearchinc.com.

16. DataSearch's website states that "All DataSearch operations are located in San Antonio, Texas."

17. DataSearch's website describes DataSearch as "your partner for Medical Receivable Solutions."

18. DataSearch's website describes its services as including, "First and Second Party Collection Services." To this end, DataSearch's website states that, "When bad-debt

3

services are required, you can count on over 48 years of collection services EXCLUSIVE to the medical industry. You can also count on our expertise with FDCPA an HIPAA compliance. DataSearch is a 48-year member in good standing with American Collectors International of credit and collection professionals."

19. DataSearch's website further states that "to maximize cash recovery, our call center teams operate with sone of the most advanced technology available in the collection industry. We utilize Interactive Voice Response (IVR), automated predictive dialing, and automated routing of incoming calls. . . ."

20. DataSearch has represented in other court cases filed against it that it is a third-party collection agency that collects consumer debts.

21. Elevate PFS is a Delaware limited liability company, whose principal place of business is in Spring, Texas. Elevate PFS may be served with process by serving its registered agent Cogency Global, Inc., 1601 Elm Street, Suite 4360, Dallas, Texas 75201.

22. Elevate PFS's website is located at www.elevatepfs.com.

23. Elevate PFS's website states that Elevate PFS "works with hospitals and health care facilities across the U.S. to help patients pay their medical bills and understand their insurance options. The hospital or health care provider you visited is one of our contracted partners and has asked us to reach out to you to assist with financial care options related to your visit."

**JURISDICTION AND VENUE**

24. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district

4

courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

25.     Defendants each have their principal places of business within the State of Texas.

26.     Furthermore, Defendants knowingly and purposefully availed itself to the State of Texas when they called Ms. Brown on her "210" area code phone number, a number which is associated with the State of Texas.

27.     Additionally, Defendants called Ms. Brown in connection with an account that originated at a hospital in San Antonio, Texas.

28.     Ms. Brown experienced the harms associated with her claims in the State of Texas.

29.     For those reasons, and as set forth generally in this Complaint, this Court has general and specific personal jurisdiction over the parties to this action, and venue is proper pursuant to 28 U.S.C. §1391(b)(2).

**FACTUAL BACKGROUND**

30.     At all times relevant to this Complaint, Ms. Brown was the owner of a cell phone, bearing phone number 210-XXX-9394.

31.     Ms. Brown's then-boyfriend, Neil Davis, was admitted to University Health System d/b/a University Hospital in San Antonio, Texas on or about February 7, 2024.

32.     Ms. Brown was called by University Health System d/b/a University Hospital in, on the morning of February 9, 2024, to advise that her boyfriend was "coding."

33.     On information and belief, University Hospital called Ms. Brown because she was listed as her boyfriend's emergency contact.

34. On February 9, 2024, Ms. Brown's boyfriend tragically passed away at University Hospital, in San Antonio, Texas.

35. Ms. Brown was not a guarantor of her deceased-boyfriend's medical bills.

36. Ms. Brown did not agree to pay for her deceased-boyfriend's medical bills.

37. Ms. Brown did not include her deceased-boyfriend on any policy of insurance that would provide coverage for any of her late-boyfriend's medical bills.

38. On February 12, 2024, Ms. Brown received a prerecorded voice call on her cell phone voicemail from Elevate PFS. The prerecorded voice call stated, "Hello. This is Elevate Patient Financial Solutions calling on behalf on behalf of University Hospital. We help uninsured patients apply for benefits that may cover their medical expenses. If this is Neil Davis, we would like to determine if you or a member of your household may qualify for assistance. Please return our call toll-free at 844-548-5591. Please use reference number 25352786 when returning this call. Our hours of operation are Monday through Friday 9 o'clock a.m. to 5 o'clock p.m., Central Standard Time. Thank you."

39. This call was not from a live person, but a prerecorded message. The call included unnatural pauses and sections of which different recorded voices came on the line.

40. On information and belief, upon calling back the phone number identified in the February 12, 2024, voicemail, the caller hears a recording that says you have reached the line for "Elevate PFS."

41. On February 13, 2024, Brown received yet another call from the same phone number. Upon answering the call, Ms. Brown heard a prerecorded voice on the other line. Once Ms. Brown responded, "hello," the prerecorded voice then stated that Ms. Brown would be connected to a live agent.

42. Ms. Brown was connected to a live agent and advised the caller that her boyfriend had died and that she no longer wished to be called.

43. The calls, however, persisted. On February 22, 2024, Ms. Brown received a prerecorded voice call on her cell phone voicemail from DataSearch. The prerecorded voice call stated, "Hello. This is the business office of University Health System. Please call us at 210-293-5969 as we have important business matters to discuss with you. This is not a medical issue. Again, the number is 1-210-293-5969. Thank you."

44. Ms. Brown received this exact same prerecorded voice call on her cell phone voicemail on the following dates in 2024: March 6, 18, 28; April 10, 24; May 20; June 28; July 10, 22; August 2; September 3.

45. These calls were not from a live person but were prerecorded messages. The calls included unnatural pauses.

46. On information and belief, upon calling back the phone number 210-293-5969, the caller is given an option to pay their medical bill online at the website paymymedicalbill.us.com.

47. On information and belief, the website paymymedicalbill.us.com is associated with and/or operated or overseen by DataSearch.

48. The bottom of the paymymedicalbill.us.com website has an e-mail address of cs@datasearchinc.com.

49. On information and belief, upon calling back the phone number 210-293-5969 and connecting with a live representative, the live representative will advise the caller that they are with DataSearch.

50. On April 25, 2024, after continuing to receive calls from DataSearch, Ms. Brown called phone number 210-293-5969 and again advised that the call concerned her

7

deceased-boyfriend and requested that the calls stop. DataSearch's representative promised that the calls would stop. As detailed in this Complaint, DataSearch continued to call Ms. Brown despite its promise to stop calling her.

51. On May 20, 2024, after continuing to receive calls from DataSearch, Ms. Brown called phone number 210-293-5969 and again advised that the call concerned her deceased-boyfriend and requested that the calls stop. DataSearch's representative again promised that the calls would stop. As detailed in this Complaint, DataSearch continued to call Ms. Brown despite its promise to stop calling her.

52. On May 31, 2024, Ms. Brown received a prerecorded voice call on her cell phone voicemail from DataSearch. The prerecorded voice call stated, "Hello. This is DataSearch calling for Neil Davis. We are calling to follow up on a letter you should have received from us. Please return this call to 1-800-745-7354. Our office is open until 6:00 p.m. Central on Tuesdays and Thursdays and until 5:00 p.m. Monday, Wednesday and Friday. It is important that we speak with you soon. Se habla Espanol."

53. Ms. Brown received this exact same prerecorded voice call in her cell phone voicemail on the following dates in 2024: July 1, 12, 23; August 1, 22; September 4.

54. These calls were not from live persons but were prerecorded messages. The calls included unnatural pauses and sections of which different recorded voices came on the line.

55. On information and belief, upon calling back the phone number 1-800-745-7354, and connecting with a live representative, the live representative will advise the caller that they are with DataSearch.

56. On information and belief, upon calling back the phone number 1-800-745-7354, the caller hears a recording that states, in part, "This is an attempt to collect a debt.

Any information obtained will be used for that purpose."

## CLASS ALLEGATIONS

57.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Ms. Brown brings this Complaint as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

58.     Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Ms. Brown seeks to represent the following classes:

> **DataSearch Prerecorded Voice Call Class:** All persons in the United States who from four years prior to the filing of this action through the date a class is certified to whom DataSearch placed a prerecorded or artificial voice call to the recipient's cell phone or residential wireline phone.
>
> **Elevate PFS Prerecorded Voice Call Class:** All persons in the United States who from four years prior to the filing of this action through the date a class is certified to whom DataSearch placed a prerecorded or artificial voice call to the recipient's cell phone or residential wireline phone.

59.     Ms. Brown reserves the right to add administrative subclasses, or to amend the definition of the proposed classes, during the lawsuit proceedings.

60.     The members of the proposed classes are so numerous that joinder of all members is impracticable. Ms. Brown reasonably believes that hundreds or thousands of people have been harmed by Defendants' actions. The names and phone numbers of the members of the proposed classes are readily identifiable through records available to Defendants or those acting on its behalf.

61.     Members of the proposed classes have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

9

62. On information and belief, Defendants have called and continue to place prerecorded voice calls to people without the appropriate form of consent. It is reasonable to expect that Defendants will continue to make such calls absent this lawsuit, particularly as Ms. Brown repeatedly requested to no longer be called, yet she continued to receive calls.

63. Common questions of law and fact exist as to all members of the proposed classes and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed classes include, but are not limited to:

   a. Whether the voice technology used by Defendants constitutes a "pre-recorded voice" as defined by 47 U.S.C. § 227(b) of the TCPA;

   b. Whether Defendants' conduct violates 47 U.S.C. § 227(b) of the TCPA;

   c. Whether Defendants' manner and system of obtaining consumer "consent" was legally deficient;

   d. Whether Defendants' conduct violates the rules and regulations implementing the TCPA; and

   e. Whether Ms. Brown and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendants' conduct.

64. Ms. Brown's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed classes and are based on the same legal theories.

65. Ms. Brown and her counsel will fairly and adequately protect the interests of the members of the proposed classes. Ms. Brown's interests do not conflict with the interests of the proposed classes he seeks to represent. Ms. Brown has retained lawyers who are competent and experienced in consumer litigation, the TCPA and class-actions.

66. Ms. Brown's counsel will vigorously litigate this case as a class action, and Ms. Brown and her counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

67. A class action is superior to all alternative methods of adjudicating this controversy, including through individual lawsuits. Joinder of all proposed members of the proposed classes in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For members of the proposed classes, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed classes had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

68. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

69. Questions of law and fact, particularly the propriety of placing prerecorded voice calls and calling people who request no longer to be called, predominate over questions affecting only individual members.

70. Defendants have acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b) *et seq.* – Against Defendant DataSearch
### (Prerecorded Voice Violations – Individually and on Behalf of the DataSearch Prerecorded Voice Class)

71. Ms. Brown incorporates the allegations in the previous paragraphs as if fully stated in this Count.

72. The TCPA states, in relevant part, "It shall be unlawful . . . (A) to make any call . . . using [a] prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone . . . ." 47 U.S.C. § 227(b)(1).

73. A prerecorded voice call cannot be placed to a recipient without first obtaining the recipient's "prior express consent." *See generally* 47 U.S.C. § 227(b)(1)(B).

74. Ms. Brown and the putative class members did not provide "prior express consent" for DataSearch to contact them on their phones.

75. By placing calls to the phones of Ms. Brown and the putative class members without first obtaining their prior express consent, DataSearch violated the express provisions of the TCPA, including, but not limited to, 47 U.S.C. § 227(b)(1).

76. The TCPA provides damages of $500 and up to $1,500 per violation. 47 U.S.C. § 227(b)(3).

77. DataSearch violated the Section 227(b) of the TCPA by placing the previously mentioned prerecorded voice calls to Ms. Brown's and the putative class members' phones.

78. DataSearch knew or should have known it did not have the appropriate form of consent to contact Ms. Brown and the putative class members yet continued to call them.

79. Ms. Brown and the putative class members are each entitled to $500 per violation of Section 227(b) of the TCPA, and up to $1,500.00 for every violation determined to be willful.

WHEREFORE Plaintiff Lisa Brown, individually, and on behalf of all others similarly situated, requests the Court enter judgment in her favor and against Defendant Data Search Collection, Inc. and grant the following relief:

    A. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Ms. Brown as the class representative;

    B. Enter an order appointing Guerra LLP and Butsch Roberts & Associates LLC as class counsel;

    C. Enter judgment in favor of Ms. Brown and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation, and up to $1,500 per violation if DataSearch willfully violated Section 227(b) of the TCPA and/or the applicable TCPA regulations;

    D. Enter a judgment in favor of Ms. Brown and the DataSearch Prerecorded Voice Call Class members that enjoins DataSearch from violating the TCPA's regulations prohibiting DataSearch from placing prerecorded voice calls without first obtaining the proper form of consent;

    E. Award Ms. Brown and the class all expenses of this action, and requiring DataSearch to pay the costs and expenses of class notice and administration;

    F. Award all applicable pre- and post-judgment interest and court costs; and,

    G. Award Ms. Brown and the class such further and other relief the Court deems just and appropriate.

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227(c) *et seq.* – Against Defendant Elevate PFS (National DNC List Violations – Individually, and on Behalf of The Elevate PFS Prerecorded Voice Class)**

80. Ms. Brown incorporates the allegations in the previous paragraphs as if fully stated in this Count.

81. The TCPA states, in relevant part, "It shall be unlawful . . . (A) to make any call . . . using [a] prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone . . . ." 47 U.S.C. § 227(b)(1).

82. A prerecorded voice call cannot be placed to a recipient without first obtaining the recipient's "prior express consent." *See generally* 47 U.S.C. § 227(b)(1)(B).

83. Ms. Brown and the putative class members did not provide "prior express consent" for Elevate PFS to contact them on their phones.

84. By placing calls to the phones of Ms. Brown and the putative class members without first obtaining their prior express consent, Elevate PFS violated the express provisions of the TCPA, including, but not limited to, 47 U.S.C. § 227(b)(1).

85. The TCPA provides damages of $500 and up to $1,500 per violation. 47 U.S.C. § 227(b)(3).

86. Elevate PFS violated the Section 227(b) of the TCPA by placing the previously mentioned prerecorded voice calls to Ms. Brown's and the putative class members' phones.

87. Elevate PFS knew or should have known it did not have the appropriate form of consent to contact Ms. Brown and the putative class members yet continued to call them.

88. Ms. Brown and the putative class members are each entitled to $500 per violation of Section 227(b) of the TCPA, and up to $1,500.00 for every violation determined to be willful.

WHEREFORE Plaintiff Lisa Brown, individually, and on behalf of all others similarly situated, requests the Court enter judgment in her favor and against Defendant Elevate Patient Financial Solutions, LLC and grant the following:

A. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Ms. Brown as the class representative;

B. Enter an order appointing Guerra LLP and Butsch Roberts & Associates LLC as class counsel;

C. Enter judgment in favor of Ms. Brown and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation, and up to $1,500 per violation if Elevate PFS willfully violated Section 227(b) of the TCPA and/or the applicable TCPA regulations;

D. Enter a judgment in favor of Ms. Brown and the Elevate PFS Prerecorded Voice Call Class members that enjoins Elevate PFS from violating the TCPA's regulations prohibiting Elevate PFS from placing prerecorded voice calls without first obtaining the proper form of consent;

E. Award Ms. Brown and the class all expenses of this action, and requiring Elevate PFS to pay the costs and expenses of class notice and administration;

F. Award all applicable pre- and post-judgment interest and court costs; and,

G. Award Ms. Brown and the class such further and other relief the Court deems just and appropriate.

## COUNT III
**Violations of the FDCPA, 15 U.S.C. § 1692 *et seq.* – Against Defendant DataSearch**

89. Ms. Brown incorporates the allegations in the previous paragraphs as if fully stated in this Count.

90. Ms. Brown is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3), as she is a natural person from whom DataSearch attempted to collect a debt.

91. DataSearch attempted to collect from Ms. Brown a "debt" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(5), as Ms. Brown was alleged to have owed a sum of money that arose from a transaction that was primarily for personal, family or household purposes.

92. DataSearch is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6), because DataSearch regularly collects or attempts to collect, debts owed or asserted to be owed to other entities.

93. DataSearch is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6), because DataSearch uses interstate commerce or the mails for a business the principal purpose of which is the collection of debts.

94. DataSearch's communications with Ms. Brown were not attempts to locate information about a consumer as DataSearch was aware that Ms. Brown's boyfriend had deceased.

95. DataSearch's attempts to collect a debt from Ms. Brown violate 15 U.S.C. § 1692d of the FDCPA because such actions in attempting to collect a debt on which Ms. Brown did not owe, including doing so after Ms. Brown repeatedly advised the account on which she was being contacted concerned her deceased-boyfriend, constitute a harassing, oppressive and/or abusive means of attempting to collect a debt.

96. DataSearch's attempts to collect a debt from Ms. Brown violate 15 U.S.C. § 1692e of the FDCPA because such actions in attempting to collect a debt on which Ms. Brown did not owe, including doing so after Ms. Brown repeatedly advised the account on which she was being contacted concerned her deceased-boyfriend, constitute a false, deceptive and/or misleading means to attempt to collect a debt.

97. DataSearch's attempts to collect a debt from Ms. Brown violate 15 U.S.C. § 1692f of the FDCPA because such actions in attempting to collect a debt on which Ms. Brown did not owe, including doing so after Ms. Brown repeatedly advised the account on which she was being contacted concerned her deceased-boyfriend, constitute an unfair and/or unconscionable means to collect a debt.

98. Due to DataSearch's illegal conduct, Ms. Brown is entitled to actual damages under 15 U.S.C. § 1692k(a)(1) of the FDCPA. Among other things, DataSearch's improper debt collection practices concerning Ms. Brown's deceased-boyfriend caused Ms. Brown severe stress, anxiety, trauma, worry, and loss of sleep.

99. Due to DataSearch's illegal conduct, Ms. Brown is entitled to statutory damages of $1,000.00 under 15 U.S.C. § 1692k(a)(2) of the FDCPA.

100. Due to DataSearch's illegal conduct, Ms. Brown is entitled to her attorneys' fees and costs incurred in litigating this action under 15 U.S.C. § 1692k(a)(3) of the FDCPA.

WHEREFORE Plaintiff Lisa Brown requests the Court grant enter judgment in her favor and against Defendant Data Search Collection, Inc. in an amount exceeding $100,000, for all her damages under the FDCPA, including actual damages, statutory damages, attorneys' fees and costs incurred. In addition, Ms. Brown seeks the recovery of all applicable pre- and post-judgment interest amounts.

**COUNT IV**
**Violations of the TDCA, Tex. Fin. Code Ann. § 392.001 *et seq*. –**
**Against Defendant DataSearch**

101. Ms. Brown incorporates the allegations in the previous paragraphs as if fully stated in this Count.

102. Ms. Brown is a "consumer" as defined by the TDCA, Tex. Fin. Code Ann. § 392.001(1), because Ms. Brown is an individual from whom DataSearch attempted to collect a debt.

103. This matter concerns a "consumer debt" as defined by the TDCA, Tex. Fin. Code Ann. § 392.001(2), because the debt concerns an alleged obligation incurred primarily for personal, family, or household purposes.

104. DataSearch's actions detailed in this Complaint constitute "debt collection" activities as defined by the TDCA, Tex. Fin. Code Ann. § 392.001(5), because DataSearch attempted to collect a debt allegedly owed to another.

105. DataSearch is a "debt collector" as defined by the TDCA, Tex. Fin. Code Ann. § 392.001(6), because DataSearch regularly engages in debt collection.

106. DataSearch's communications with Ms. Brown were not attempts to locate information about a consumer as DataSearch was aware that Ms. Brown's boyfriend had deceased.

107. DataSearch's attempts to collect a debt from Ms. Brown violate Tex. Fin. Code Ann. § 392.302(4) of the TDCA because such actions in attempting to collect a debt on which Ms. Brown did not owe, including doing so after Ms. Brown repeatedly advised the account on which she was being contacted concerned her deceased-boyfriend, constitute a harassing, oppressive and/or abusive means of attempting to collect a debt.

108. DataSearch's attempts to collect a debt from Ms. Brown violate Tex. Fin. Code Ann. § 392.304(8) of the TDCA because such actions in attempting to collect a debt on which Ms. Brown did not owe, including doing so after Ms. Brown repeatedly advised the account on which she was being contacted concerned her deceased-boyfriend, constitute a fraudulent, deceptive and/or misleading means to attempt to collect a debt.

109. DataSearch's attempts to collect a debt from Ms. Brown violate Tex. Fin. Code Ann. § 392.303(2) of the TDCA because such actions in attempting to collect a debt on which Ms. Brown did not owe, including doing so after Ms. Brown repeatedly advised the account on which she was being contacted concerned her deceased-boyfriend, constitute an unfair and/or unconscionable means to collect a debt.

110. Due to DataSearch's illegal conduct, Ms. Brown is entitled to injunctive relief and actual damages under TEX. FIN. CODE ANN. § 392.403(2)(a) of the TDCA. Among other things, DataSearch's improper debt collection practices concerning Ms. Brown's deceased-boyfriend caused Ms. Brown severe stress, anxiety, trauma, worry, and loss of sleep.

111. Due to DataSearch's illegal conduct, Ms. Brown is entitled to her attorneys' fees and costs incurred in litigating this action under TEX. FIN. CODE ANN. § 392.403(2)(b) of the TDCA.

WHEREFORE Plaintiff Lisa Brown requests the Court grant enter judgment in her favor and against Defendant Data Search Collection, Inc. in an amount to be determined by a jury for all her damages under the TDCA, including injunctive relief, actual damages, attorneys' fees and costs incurred. In addition, Ms. Brown seeks the recovery of all applicable pre- and post-judgment interest amounts.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff Lisa Brown demands a jury trial.

Respectfully submitted,

**GUERRA LLP**
875 East Ashby Place
Suite 1200
San Antonio, Texas 78212
Telephone: (210) 447-0500
Facsimile: (210) 447-0501

By:   */s/ Francisco Guerra, IV.*
FRANCISCO GUERRA, IV.
State Bar No. 00796684
fguerra@guerrallp.com
JENNIFER NEAL
State Bar No. 24089834
jneal@guerrallp.com

And

**BUTSCH ROBERTS & ASSOCIATES LLC**

*/s/ Christopher E. Roberts*
Christopher E. Roberts
Missouri Bar No. 61895
(*Pro Hac Vice forthcoming*)
7777 Bonhomme Avenue, Suite 1300
Clayton, MO 63105
Telephone: (314) 863-5700
croberts@butschroberts.com

*Attorneys for Plaintiff*